UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICE SCOTT-MONCRIEFF,<br><br>              Plaintiff<br><br>v.<br><br>THE LOST TRAILS, LLC, et al<br><br>              Defendants | CIVIL ACTION NO. 3:16-CV-1105<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM OPINION**

Before the Court is a motion for summary judgment filed by Defendant, The Lost Trails, LLC ("Lost Trails") in this matter. The motion (Doc. 50) was filed on November 14, 2017, together with a brief in support (Doc. 52), and Statement of Facts (Doc. 53). Plaintiff, Patrice Scott-Moncrieff, filed a brief in opposition (Doc. 54) on November 28, 2017, a reply brief (Doc. 55) was filed on December 6, 2017, and a *sur* reply brief (Doc. 62) was filed on January 17, 2018. This motion is ripe for disposition. For the following reasons, the Court will grant the motion for summary judgment.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The factual background is taken from Defendant's Statements of Undisputed Material Facts (Doc. 53). Where the parties dispute certain facts, those disputes are noted. In addition, the facts have been taken in the light most favorable to the plaintiff as the non-moving party, with all reasonable inferences drawn in her favor. This is in accordance with the Local Rules of this Court, which state, in pertinent part, as follows:

**LR 56.1 Motions for Summary Judgment.**

A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in

numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Local Rule 56.1 (emphasis added).

To comply with Local Rule 56.1, Plaintiff should (1) clearly and unequivocally admit or deny whether each fact contained in Defendant's statement of facts is undisputed and/or material, (2) set forth the basis for any denial if any fact is not admitted in its entirety, and (3) provide a citation to the record that supports any such denial. *Occhipinti v. Bauer*, No. 3:13-CV-1875, 2016 WL 5844327, at *3 (M.D. Pa. Sept. 30, 2016); *Park v. Veasie*, 2011 WL 1831708, *4 (M.D. Pa. 2011). As such, where Plaintiff disputes a fact set forth by Defendant, but fails to provide a citation to the record supporting their denial, that fact will be deemed to be admitted. "Unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F.Supp.2d 490, 493 (E.D.Pa. 2010). In this matter, Plaintiff, though including a statement of fact in her brief in opposition to Defendant's motion for summary judgment (Doc. 54), does not comply with the local rules and submit a separate statement of material facts in opposition to Defendant's statement of material facts. Notably, despite being given the opportunity to file a sur-reply brief in this matter, after Defendant raises the issue of Plaintiff's failure to file a statement of facts in its Reply Brief (Doc. 55), Plaintiff still did not file a separate statement of

fact. As such, the facts set forth in Defendant's statement of material facts will be deemed admitted.

On October 20, 2013, Plaintiff visited Defendant's ATV facility for the first time and, prior to using the facility, executed a waiver of liability. (Doc. 50-2, at 4-5; DOC. 53, AT ¶¶ 5, 9). Plaintiff did not read the waiver in its entirety prior to signing it, and claims she was rushed during the process. (Doc. 53, at ¶ 7; Doc. 50-2, at 71). On June 22, 2014, Plaintiff returned to the facility, at which time she alleged suffered injuries when she was thrown from the ATV she was riding. (Doc. 1).

The release from liability signed by Plaintiff on October 20, 2013 reads, in pertinent part, as follows:

> In consideration for the opportunity for event participation and utilization of general admission, all facilities, equipment and premises of Lost Trails, LLC (LT), North American Warhorse Inc, (NAW) Theta Land Corp. (TLC), 1000 Dunham Drive LLC (DD), and their respective affiliates, members, agents, employees, heirs and assigns and other associates in furtherance of the sport of Off-Road Riding, racing and any other activities, scheduled or unscheduled, (hereinafter collectively called "Off-Roading.") This Waiver shall commence on the date first signed and shall remain binding for all time thereafter.
>
> By signing this document, I hereby understand and agree for me and/or my minor child to this Release of Liability, Wavier of Legal rights and Assumption of Risk and to the terms hereof as follows:
>
> …
>
> 2. I hereby RELEASE AND DISCHARGE LT, NAW, TLC, DD and all related parties, event volunteers, company officers, directors, elected officials, agents, employees, and owners of equipment, the land used for Off-Roading activities and any owners of adjourning lands to the premises (hereinafter collectively referred to as "Released parties") from any and all liability claims, demands or causes of action that I, my minor child or my representatives and my heirs may hereafter have for injuries, loss of life, and all other forms of damages arising out of my voluntary participation in Off-Roading activities.
>
> 3. I understand and acknowledge that Off-Road riding and racing activities have inherent dangers that no amount of care, caution, instruction or expertise can

eliminate and I EXPRESSLY AND VOLUNTARILY ASSUME ALL RISK OF DEATH OR PERSONAL INJURY OR OTHER FORMS OF DAMAGES SUSTAINED WHILE PARTICIPATING IN OFF-ROADING ACTIVITIES WHETHER OR NOT CAUSED BY THE NEGLIGENCE OF THE RELEASE PARTIES.

4. I further agree that I WILL NOT SUE OR OTHERWISE MAKE A CLAIM on behalf of me and/or on behalf of my minor child, against the Released Parties for damages or other losses sustained as a result of my participation in Off-Roading activities.

5. I also agree to INDEMNIFY AND HOLD THE RELEASED PARTIES HARMLESS from all claims, judgments and costs, including attorneys' fees, incurred in the connection with any action brought against them, jointly or severally, as a result of my or my minor child's participation in "Off-Roading" activities.

6. I take full responsibility for, and hold harmless Released Parties for any injury, property damage, or death that I or my minor child may suffer or inflict upon others .or their property as a result of my engaging in Off-Roading activities.

7. I further re*present* that I am at least 18 years of age, or that as the parent or (adult) legal guardian, I waive and release any and all legal rights that may accrue to me, to my minor child or to the minor child for whom I am (adult) legal guardian, as the result of any injury or damage that my minor child, the minor child for whom I am (adult) legal guardian, or I may suffer while engaging in Off-Roading activities.

8. I hereby expressly recognize that this Release of Liability, Waiver of Legal Rights and Assumption of Risks is a contract pursuant to which I have released any and all claims against the Released Parties resulting from participation in Off-Roading activities including any claims related to the negligence of the Released Parties by any of the undersigned.

9. I further expressly agree that the foregoing Release of Liability, Waiver of Legal Rights and Assumption of Risks is intended to be as ·broad and inclusive as is permitted by law of the province or state in which services, materials and/or equipment are provided and the course of business is conducted, and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect. I agree that, should any claim or action arise from my participation as described herein, including any issue as to the applicability of this Release or any provision contained within it, proper Jurisdiction and Venue will lie only in Monroe County, Pennsylvania and I waive Jurisdiction and Venue anywhere else.

([Doc. 54-1, at 20-21](#)).

Plaintiff initialed all of the above provisions. She did not initial paragraph 10 on the next page, however, which states as follows:

> l0. Having had ample time and opportunity to raise any concerns or questions that I may have, and having read and understood the information, I certify my acceptance of the aforementioned provisions by signing below.
>
> I am in good health and physical condition. I am voluntarily participating with knowledge that dangers are involved and agree to assume all risks. I also understand that if I am injured or become ill, I agree that Lost Trails LLC, or any of its employees, volunteers or guests will not be held liable should they render medical assistance to me or my minor child.

(Doc. 54-1, at 21).

Despite not specifically initialing paragraph 10, Plaintiff did sign the agreement, indicating her acceptance and understanding of the exculpatory clauses. (Doc. 54-1).

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. See *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.").

As this jurisdiction of this Court is sounded in the diversity of the parties pursuant to 28

U.S.C. § 1332(a), Pennsylvania substantive law will apply. E*rie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**III. DISCUSSION**

Defendant submits that it is entitled to judgment in its favor because Plaintiff executed a valid waiver of all liability prior to ever engaging in any recreational activities on Defendant's property; because such releases and waivers are recognized under Pennsylvania law; and because within the waiver, Plaintiff specifically acknowledged that she was assuming all of the risks associated with these activities. (Doc. 52, at 2). In response, Plaintiff argues that Plaintiff did not sign a waiver on the date of the accident, and therefore did not waive any liability or assume any risk; that she was rushed and unable to read the original waiver in its entirety; that the waiver is unenforceable as not properly conspicuous; and finally, that because the earlier waiver signed by Plaintiff was "for all time thereafter" it should not be enforced. (Doc. 54).

A. THE EXCULPATORY CLAUSE IS VALID

An exculpatory clause is valid if the following conditions are met: 1) the clause does not contravene public policy; 2) the contract is between parties relating entirely to their own private affairs; and 3) the contract is not one of adhesion. *Evans v. Fitness & Sports Clubs, LLC*, No. CV 15-4095, 2016 WL 5404464, at *3 (E.D. Pa. Sept. 28, 2016); *Topp Copy Prods., Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993). A valid exculpatory clause is only enforceable if "the language of the parties is clear that a person is being relieved of liability for his own acts of negligence." *Id.* A waiver of liability violates public policy only if it involves "a matter of interest to the public or the state. Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." *Seaton v. E. Windsor Speedway, Inc.*, 582 A.2d 1380, 1382 (Pa. Super. Ct. 1990); *see also Kotovsky v. Ski Liberty*

*Operating Corp.*, 603 A.2d 663, 665 (Pa. Super. Ct. 1992). The exculpatory clause at issue in this case does not contravene public policy because it does not affect a matter of interest to the public or the state. *See Kotovsky*, 603 A.2d at 665-66 (holding that releases did not violate public policy because "[t]hey were [in] contracts between private parties and pertained only to the parties' private rights. They did not in any way affect the rights of the public."). Thus, the exculpatory clause meets the first two prongs of the *Topp Copy* standard for validity.

The contract meets the third prong of the *Topp Copy* validity standard because it is not a contract of adhesion. Agreements to participate in "voluntary sporting or recreational activities" are not contracts of adhesion because "[t]he signer is a free agent who can simply walk away without signing the release and participating in the activity, and thus the contract signed under such circumstances is not unconscionable." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190-91 (Pa. 2010). "The signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services, but merely governs a voluntary recreational activity." *Id.* The Agreement at issue here is not a contract of adhesion because it is a contract to participate in voluntary recreational activities. The Agreement does not relate to an essential service, and Plaintiff was free to engage in the activity, or not, as she wished. She was under no compulsion to do so. *See Chepkevich, supra*; s*ee also Hinkal v. Pardoe*, 133 A.3d 738, 741-2 (Pa. Super. Ct. 2016) (en banc), *appeal denied*, 141 A.3d 481 (Pa. 2016) (citing the "thorough and well-reasoned opinion" of the trial court, which held that the plaintiff's gym membership agreement was not a contract of adhesion because exercising at a gym is a voluntary recreational activity and the plaintiff was under no compulsion to join the gym). The Agreement meets all three prongs of the *Topp Copy* standard for validity, and thus the exculpatory clause is facially valid.

### B. THE EXCULPATORY CLAUSE IS ENFORCEABLE

Even if an exculpatory clause is facially valid, it is enforceable only if it clearly relieves a party of liability for its own negligence. *Evans v. Fitness & Sports Clubs, LLC*, No. CV 15-4095, 2016 WL 5404464, at *5 (E.D. Pa. Sept. 28, 2016). The following standards guide a court's determination of the enforceability of an exculpatory clause:

> 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

*Topp Copy*, 626 A.2d at 99.

The Court now turns to Plaintiff's arguments against the enforceability of the exculpatory clause.

#### 1. Plaintiff's first waiver is enforceable, including the clause "for all time thereafter."

Plaintiff submits that the waiver she executed in October 2013 did not apply to her visit to Defendant on June 22, 2014, because "it is uncontroverted that the Defendant has a policy that dictates all riders must sign a waiver every time they ride an ATV at their park" (Doc. 54, at 4), and Plaintiff did not sign a waiver when she visited the park in June 2014. Defendant counters that Plaintiff is misconstruing the record in making this assertion. (Doc. 55, at 2). Specifically, Defendant submits that the testimony cited by Plaintiff is that of a former maintenance man who has nothing to do with policy or procedure at Defendant's property, and further, that he neither testifying as a representative of, nor acting on behalf of, Lost Trails, LLC. (Doc. 55-1, at 4). The testimony offered by the Plaintiff on this issue is that of Matthew Anneman, who testified as follows:

> Q: Everybody that goes there is supposed sign the waiver before they go out on the trails, is that fair to say?
>
> A: Yes.
>
> Q: Do you know if Miss Moncrieff signed a waiver before she went on the trail that day?
>
> A: Yes. It is imperative that everybody who comes to ride on that mountain is to fill out a waiver.
>
> …
>
> Q: So every single time somebody comes to the facility, before they go out there, they go in and sign a waiver.
>
> A: Yes.
>
> Q: And you're not involved in that part of it, the sign in, and the waiver.
>
> A: No, no. Leslie or one of her employees would work the front desk.

([Doc. 54-1, at 12](); Anneman Dep. at 36).

The Court finds this testimony to have little to no bearing on the validity and applicability of the October 2013 waiver. Even construing the evidence in the record in Plaintiff's favor, Mr. Anneman's testimony does not change the fact Plaintiff did sign a waiver in October 2013, one which indicated that it "shall remain binding for ___all___ time thereafter." ([Doc. 54-1, at 20]()) (emphasis added). Nothing in the record before the Court indicates that Mr. Anneman was responsible for either policy at Defendant's facility, or in any way even involved with the waiver process. Further, the language of the waiver is clear. In interpreting the language of a contract, courts attempt to ascertain the intent of the parties and give it effect. *[Sycamore Rest. Grp., LLC v. Stampfi Hartke Assocs., LLC]()*, 2017 Pa. Super. 221, 174 A.3d 651, 656 (2017); *[LJL Transp., Inc. v. Pilot Air Freight Corp.]()*, 599 Pa. 546, 962 A.2d 639, 648 (2009). When a writing is clear and unequivocal, its meaning must be determined by its contents alone. *Synthes*

*USA Sales, LLC v. Harrison*, 2013 Pa. Super. 324, 83 A.3d 242, 250–51 (2013); *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 591, 777 A.2d 418, 429 (2001) (citations and quotation marks omitted). "[I]t is not the function of this Court to re-write it, or to give it a construction in conflict with ... the accepted and plain meaning of the language used." *Id.;* citing *Robert F. Felte, Inc. v. White,* 451 Pa. 137, 144, 302 A.2d 347, 351 (1973) (citation omitted). Here, the language of the waiver form (Doc. 54-1, at 20) is unequivocal in stating the intent that it is binding for **_all time thereafter_**. As the Pennsylvania Supreme Court has stated,

> The word "all" needs no definition; it includes everything, and excludes nothing. There is no more comprehensive word in the language, and as used here it is obviously broad enough to cover liability for negligence. If it had been the intention of the parties to exclude negligent acts they would have so written in the agreement. This paragraph of the lease is clear and unambiguous. No rules of construction are required to ascertain the intention of the parties.

> *Topp Copy Prod., Inc. v. Singletary*, 533 Pa. 468, 472, 626 A.2d 98, 100 (1993); citing *Cannon v. Bresch,* 307 Pa. 31, 34, 160 A. 595, 596 (1932).

As such, the Court finds that the October 2013 waiver executed by Plaintiff was in effect during her June 2014 visit to Defendant's property.[1]

### 2. Plaintiff's argument that she was rushed and unable to read the original waiver in its entirety is without merit.

Plaintiff next argues that, should the Court find that the 2013 waiver was in effect in June 2014, she was rushed and therefore did not have time to read the waiver before signing it.

---

[1] Neither party cites case law for the proposition that waivers of unlimited duration are either enforceable or not, and the Court was unable to find Pennsylvania case law directly on point. However, the Court notes that releases upheld as valid by the courts do not include any limitation in duration. *See Hinkal v. Pardoe*, 2016 Pa. Super. 11, 133 A.3d 738, 750, *appeal denied*, 636 Pa. 650, 141 A.3d 481 (2016) (agreement included a provision that the exculpatory clauses and waiver "shall survive the termination of this Agreement and Member's membership"); *Evans v. Fitness & Sports Clubs, LLC*, No. CV 15-4095, 2016 WL 5404464, at *1 (E.D. Pa. Sept. 28, 2016) (member "forever gives up any claim or demands").

"The law of Pennsylvania is clear. One who is about to sign a contract has a duty to read that contract first." *Hinkal v. Pardoe*, 2016 Pa. Super. 11, 133 A.3d 738, 743, *appeal denied*, 636 Pa. 650, 141 A.3d 481 (2016); *In re Estate of Boardman,* 80 A.3d 820, 823 (Pa.Super.2013); *citing Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169, 1174 (E.D.Pa.1990) (citations omitted). In the absence of fraud, the failure to read a contract before signing it is "an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract." *Germantown Sav. Bank v. Talacki,* 441 Pa.Super. 513, 657 A.2d 1285, 1289 (1995) (*citing Standard Venetian Blind Co. v. American Emp. Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 note (1983)); *see also Wroblewski v. Ohiopyle Trading Post, Inc.*, No. CIV.A. 12-0780, 2013 WL 4504448, at *7 (W.D. Pa. Aug. 22, 2013) (Under Pennsylvania law, the failure to read a contract does not nullify the contract's validity.); *Arce v. U–Pull–It Auto Parts, Inc.,* No. 06–5593, 2008 WL 375159, at *5–9 (E.D.Pa. Feb.11, 2008) (written release found to be enforceable even when the agreement was in English but the plaintiff only read and spoke Spanish, noting that the "[p]laintiff cannot argue that the release language was inconspicuous or somehow hidden from his attention.... Nor did Defendant have an obligation to verify that [p]laintiff had read and fully understood the terms of the document before he signed his name to it."). In this case, there is no allegation or evidence of fraud, and as such, Plaintiff's argument is without merit.

### 3. The waiver is properly conspicuous.

Finally, Plaintiff avers that summary judgment should be denied because the waiver was not properly conspicuous, and relies on the Pennsylvania Superior Court's decision in *Beck-Hummel* in making this assertion. The *Beck-Hummel* court addressed the enforceability of a waiver of liability printed on the back of a tubing ticket. The exculpatory language appeared

in a font that was "just barely readable," and smaller than the font used for some other portions of the ticket. *Id.* at 1274-75. The *Beck-Hummel* court looked to the conspicuousness of the waiver of liability as a means of establishing whether or not a contract existed, setting forth three factors to consider in determining conspicuousness: 1) the waiver's placement in the document; 2) the size of the waiver's font; and 3) whether the waiver was highlighted by being printed in all capital letters or a different font or color from the remainder of the text. B*eck-Hummel*, 902 A.2d at 1274. After considering these factors, the *Beck-Hummel* court could not conclude as a matter of law that the exculpatory clause was enforceable because the language of the ticket was not sufficiently conspicuous as to put the purchaser/user on notice of the waiver. *Id.* at 1275.

However, in a more recent Pennsylvania Superior Court case, the court held that, as in the case presently before this Court, where the exculpatory clause was part of a signed contract between the parties, the requirements of conspicuity set forth in *Beck-Hummel* would not necessarily apply. In *Hinkal v. Pardoe*, the *en banc* Superior Court of Pennsylvania examined whether the *Beck-Hummel* conspicuity requirements for the enforcement of exculpatory clauses applies to signed valid written contracts. *Hinkal v. Pardoe*, 2016 Pa. Super. 11, 133 A.3d 738, 743-745, *appeal denied,* 636 Pa. 650, 141 A.3d 481 (2016). In *Hinkal*, the plaintiff had signed a membership agreement with Gold's Gym that contained a waiver of liability for negligence claims on the back page. *Id.* at 741. The *Hinkal* court found the plaintiff's comparison of her case to *Beck-Hummel* "inapposite" because, unlike a waiver printed on the back of a tubing ticket that did not require a signature; the gym waiver was part of a signed agreement. *Id.* at 744-45. Further, the court noted that conspicuity is generally not required to establish the formation of a contract, but "has been resorted to as a means of proving the existence or lack of a contract,"

where it is unclear whether a meeting of the minds occurred, and imposing such a requirement would allow a properly executed contract to be set aside through one party's failure to do what the law requires – reading a contract. *Id.* at 745. The *Hinkal* court concluded that the waiver of liability was valid and enforceable because the plaintiff had signed the agreement. Similarly, in *Evans v. Fitness & Sports Clubs, LLC*, the District Court determined that the exculpatory clauses contained in a fitness club's membership agreements were valid and enforceable where the plaintiff had signed both a membership and personal training agreement, including an acknowledgement that the plaintiff had read and understood the entire agreement, including the release and waiver of liability, appears directly above the plaintiff's signature on the first page of each agreement. *Evans v. Fitness & Sports Clubs, LLC*, No. CV 15-4095, 2016 WL 5404464, at *6 (E.D. Pa. Sept. 28, 2016).

The Court finds the agreement at issue in this case to be far more in line with the waivers discussed by the Pennsylvania Superior and Eastern District of Pennsylvania courts in *Hinkal* and *Evans*. The waiver form in this case was two pages in length, and initialed and signed by Plaintiff. It was not, like the waiver in *Beck-Hummel*, printed in small font on the back of a tubing ticket. This was a waiver that was reviewed, initialed and signed by Plaintiff. As such, the requirements of conspicuity set forth in *Beck-Hummel* would not necessarily apply. *Hinkal v. Pardoe*, 133 A.3d at 743-745.

Even if those conspicuity requirements applied, however the exculpatory clauses in the Waiver Form would still be enforceable. The document is titled, in larger font, bold, underlined, and all capital letters "**LOST TRAILS ATV ADVENTURES WAIVER FORM**." The language specifically indicating release and discharge, assumption of the risk, an agreement not to sue, and indemnification, are set of in all capitals in the numbered paragraphs, and were

acknowledged by Plaintiff initialing each paragraph. (Doc. 54-1, at 20). Immediately above the signature line, in all capital bold letters, the release reads:

> **I HAVE READ THIS RELEASE OF LIABILITY, WAIVER OF LEGAL RIGHTS AND ASSUMPTIONS OF RISK AND FULLY UNDERSTAND ITS CONTENTS. I SIGN IT WILLINGLY, VOLUNTARILY AND HAVING HAD AMPLE OPPORTUNITY TO RAISE ANY QUESTIONS OR CONCERNS THAT I MAY HAVE, I ACKNOWLEDGE THAT I AM PARTICIPATING VOLUNTARILY WITH KNOWLEDGE THAT DANGERS ARE INVOLVED AND I AGREE TO ASSUME ALL THE RISKS.**

(Doc. 54-1, at 21).

These clauses are conspicuously set apart, appearing in capital letters, and in the case of the final paragraph, fully set apart, in all bold and all capitals. Further, the agreement itself is titled "Waiver Form" which notifies the reader of the purpose of the form. Plaintiff initialed the paragraphs setting forth the exculpatory clauses,[2] and signed the agreement directly underneath the final, most prominent waiver clause. As such, the Court finds that the exculpatory clauses are valid and enforceable. *See Evans*, 2016 WL 5404464, at n. 6.

## IV. CONCLUSION

For the reasons set forth above, the undisputed material facts in the record establish that Defendant is entitled to summary judgment. Viewing the record in light most favorable to the

---

[2] Plaintiff raises the issue of her not initialing two paragraphs on the second page of the waiver form, though provides no authority that the failure to initial two paragraphs would void the waiver. The Court finds the absence of Plaintiff's initials on those two paragraphs to be of no consequence to its analysis. The two paragraphs not initialed address a photography release and having had ample time and an opportunity to raise concerns or questions about the release, together with a certification that Plaintiff was in good health and physical condition. As discussed elsewhere in this opinion, not reading a contract, or feeling rushed, does not void the waiver. Further, the uninitialed paragraph specifically states that Plaintiff is certifying the acceptance of the aforementioned provisions by signing the agreement, of which there is no dispute that she did. (Doc. 54-1, at 21).

Plaintiff, the Court finds that the exculpatory clauses at issue are valid and enforceable. As such, Defendant's motion will be granted, and judgment will be entered in favor of Defendant.

An appropriate Order follows.

Dated: August 29, 2018         *s/ Karoline Mehalchick*
                               **KAROLINE MEHALCHICK**
                               **United States Magistrate Judge**